*In re* MARRIAGE OF ANDREE WRIGHT, Petitioner-Appellee and Cross-Appellant, and ORIN MARSHALL WRIGHT, Respondent-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—83—2791

Opinion filed July 7, 1986.—Rehearing denied February 29, 1989.

912

Jeffrey D. Colman and Cynthia G. Bowman, both of Jenner & Block, of Chicago, for appellant.

Robert Handelsman, of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:
On July 25, 1983, the trial court entered a judgment dissolving

the marriage of petitioner Andree Wright (Andree) and respondent Orin Marshall Wright (Marshall). Respondent appeals the court's determination as to property division, maintenance and attorney fees. Petitioner cross-appeals as to these same issues. For the following reasons, we affirm.

The parties were married on August 21, 1977. It was Marshall's third marriage and Andree's first. At the time of their marriage, Marshall was 34 years old and a commodities broker. Andree was 31 years old and a professional hairdresser and beautician. In April 1981, after approximately 3½ years of marriage, Andree filed a petition to dissolve the marriage. The parties had no children.

Trial of this case commenced in February 1983 on the issues of property division and maintenance. The major property dispute concerned a seat on the International Monetary Market (IMM seat). The IMM is a division of the Chicago Mercantile Exchange (CME) and is one of the major commodities markets in Chicago. Marshall maintained at trial that the IMM seat was his separate, nonmarital property. Alternatively, he urged that if the IMM seat were marital property, Andree should be required to share not only in the value of the asset, but also in the contingent liability (a pending lawsuit) relating directly to the IMM seat.

The facts pertaining to the acquisition of the IMM seat are as follows. Prior to the parties' marriage, Marshall worked as a registered representative for various commodities firms in Chicago. Sometime in 1977, before their marriage, a friend of Andree's introduced Marshall to an individual named Bernard Mirochnick. In May or June of 1977—more than two months before the marriage—Marshall and Mirochnick agreed to go into the commodities business together. They set up the MW Trading Company[1] and on July 14, 1977, they purchased the seat on the IMM. Mirochnick took out a loan at the Des Plaines National Bank to finance the purchase of the seat; MW Trading Company was obligated to make the monthly payments on the note.

Marshall and Mirochnick agreed in July of 1977 that MW Trading Company would own the seat on the IMM and that Mirochnick would own 100% of the stock of MW Trading Company. They were not informed, however, that the IMM would not permit either Mirochnick or the corporation to own the seat. As a result, on July 22, 1977, the seat was formally placed in Marshall's name as nominee for the MW Trading Company.

At the same time the seat was placed in Marshall's name, Mar-

---

[1] "MW" stands for Marshall Wright.

shall and Mirochnick agreed that Marshall would have an option to purchase MW Trading Company's stock from Mirochnick whenever Marshall so desired. This option was orally agreed to prior to the August 21, 1977, wedding. On October 3, 1977, the oral option was incorporated into a written option agreement between Marshall and Mirochnick.

In January 1978, Marshall executed his right under the option to purchase the stock of MW Trading Company from Mirochnick. Under the terms of the option agreement, Marshall had two alternatives: he could pay Mirochnick 10% a month for 10 months, or he could make a lump-sum payment. Marshall made 10% payments on January 15, 1978, and March 15, 1978, and then elected to pay the balance in one lump-sum payment. To finance the first two 10% payments, Marshall borrowed money from Andree's brother, Marc Benaim.[2] To finance the final payment, money was borrowed from the Bank of Commerce and Industry in Chicago. Benaim, Andree and Marshall each signed the note on the loan.

At the time Marshall borrowed the money from Benaim, they had conversations about entering into a partnership together. Marshall maintained that no partnership agreement was ever consummated. Andree and Marc Benaim disagreed.

Andree testified that Marshall and her brother agreed to a partnership. She stated their agreement provided that in the event of a marital breakdown, Benaim would own 50% of the stock in the company, Marshall would own 25% and that she would own the remaining 25%.

Benaim maintained that an oral partnership agreement was reached and that Marshall promised to give 50% of the seat and the MW Trading Company stock to Benaim in exchange for Benaim's loan and his signature as guarantor on the bank loan. In addition, Benaim alleged that he is entitled to 50% of all profits made by MW Trading Company. In May 1980, Benaim sued Marshall Wright in the circuit court of Cook County to enforce the alleged partnership agreement. (Marc Benaim v. Marshall Wright, No. 80—CH—3476.) It was stipulated at the outset of the dissolution proceedings that Benaim was seeking 50% of the value of the IMM seat. The suit was pending at the time the trial court entered its judgment of dissolution.

Evidence was also presented at trial as to the parties' income. The parties' joint tax returns from 1977 to 1981 show an adjusted

---

[2]The parties stipulated that Benaim loaned Marshall $64,000, and that there was a balance due on the loan of $26,000.

gross income of $15,169 in 1977; $19,699 in 1978; $15,391 in 1979[3]; $99,647 in 1980; and $112,134 in 1981. The income was earned primarily by Marshall.

Andree was trained as a beautician in Paris, France, and was licensed in Illinois. She testified that prior to the parties' marriage in August 1977, she worked as a hairdresser and beautician. From 1973 to 1976, she earned $300 to $500 per week while working for her brother, a well-known hairdresser. She was later employed part-time as a hairdresser at a Clark Street salon, earning $40 to $50 per week. She continued working at the salon until she was fired several months after her marriage. She did not find another job and remained unemployed during 1978. In 1979, she began working part time out of her home, earning $75 per week. Following the parties' separation in April 1981, Andree continued to work out of her home. She testified she earned approximately $300 per month, but also acknowledged that she did not file any income tax returns for 1981 or 1982.

Andree stated that she cannot work with her brother anymore because they do not get along. She further testified that while she is licensed to cut hair in Illinois, her brother is so well known in the industry that it is very difficult to get a job at a salon in the Chicago area because prospective employers fear that she will build up her own clientele, leave them and take her clientele over to her brother.

Andree testified about the lifestyle she and Marshall enjoyed upon the improvement of their income. They went to California several times a year, spent three weeks in Europe, and took vacations to Mexico and the Caymen Islands. Andree estimated she spent $500 to $1,000 per month on clothes, $150 per week for shoes, $224 per week for cosmetics and manicures and facials, and $87 per week for handbags.

During most of their marriage, the parties lived in a one-bedroom apartment they rented at McClurg Court in Chicago for approximately $675 per month. Shortly before their separation, they rented a second adjoining one-bedroom apartment, paying a total rent of $1,452. The court had entered a temporary support order in 1981 ordering Marshall to pay Andree that rent plus $400 per month. In April 1983, Marshall was ordered to pay Andree temporary maintenance of $2,500 per month, retroactive to December 1, 1982.

After reviewing all of the evidence, the court drew up its own "balance sheet." The court found total marital assets of $238,396 and

---

[3]The return for this year shows a short-term capital loss of $53,823 as a result of "commodities trading closed positions."

marital liabilities of $80,777, leaving a net worth of $157,519. The trial court concluded that the entire IMM seat was marital property, reasoning as follows:

"Even assuming that there was an oral option granted to Mr. Wright to acquire the seat before the marriage, the fact of the matter is that the executed contract was dated October of 1977. Two months after the marriage.

I don't think that Mr. Wright can derive any comfort from the fact that he held the seat in his name since July of 1977, because I think it is clear that he was only holding it as a nominee for the corporation. I think that the reality is that he acquired this seat in 1978 partly with his own funds and partly with financial assistance from Mr. Benaim. Therefore, I am convinced that the seat is a marital asset."

The trial court did not place any value on Benaim's claim to 50% of the IMM seat and the MW Trading Company stock. The court, however, did value as a liability the $26,800 balance due on the loan from Benaim and, as an offset, it deducted $5,000 that Marshall claimed he loaned Benaim. The court's balance sheet, as reflected in its judgment of July 26, 1983, is as follows:

ASSETS

| DESCRIPTION | AMOUNT | |
|---|---|---|
| Cash | | |
|   Personal Bank Account | $ 746 | |
|   Trading Account | 4,281 | |
|   Error Account | 224 | |
| | | $ 5,251 |
| MW Trading, Inc. | | |
|   Assets | 12,782 | |
|   Liabilities | (6,598) | |
| | | 6,184 |
| MW Financial, Inc. | | -0- |
| MW Advisory, Inc. | | 1,810 |
| MW Management, Inc. | | 7,407 |
| IMM Seat | | 165,000 |
| IOM Seat | | 48,000 |
|   Harris Loan | (30,000) | |
| | | 18,000 |
| Guns | | 13,799 |
| Marital Property | | |
|   in Husband's Possession | 6,700 | |

| | | |
|---|---:|---:|
| Marital Property | | |
| in Wife's Possession | 6,895 | |
| | | 13,595 |
| Amount due from Mirochnick | | 7,350 |
| TOTAL ASSETS | | $238,396 |

**LIABILITIES**

| | |
|---|---:|
| Back Taxes | $ 46,848 |
| McClurg Court Claim | 12,229 |
| Benaim Claim | 21,800 |
| TOTAL LIABILITIES | $ 80,877 |

NET WORTH ........................$157,519

The court determined that Marshall should receive 65% of the $157,519 net worth and Andree 35%. In addition, the court ordered Marshall to pay Andree maintenance of $2,500 per month for one year. The court further ordered Marshall to pay an additional $9,956 as an arrearage on its April 1983 temporary maintenance order.

On August 4, 1983, the court entered an order requiring Marshall to pay $12,000 of Andree's $24,000 attorney fees. Both parties filed post-trial motions which were denied by the court.

## I

■ We initially turn to the arguments raised by Marshall concerning the property disposition. He first argues that the trial court erred in finding that the IMM seat was marital property. He contends that the IMM seat was nonmarital property because his oral option arrangement was created prior to the parties' marriage.

The Illinois Marriage and Dissolution of Marriage Act (Act) provides that all property acquired by either spouse "after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property." (Ill. Rev. Stat. 1985, ch. 40, par. 503(b).) Here, while Marshall had an oral option to purchase the stock prior to the marriage, he did not actually exercise this option and acquire the stock until January 1978, which was several months following the marriage. Additionally, as the trial court found, the acquisition was made possible through the financial assistance of Andree's brother. Under these circumstances, we believe that the trial court properly concluded that the IMM seat was marital property.

■ Marshall also alleges that the court erred in imposing on him the full liability of the lawsuit brought by Andree's brother seeking a 50% interest in the IMM seat. That lawsuit has been resolved during the pendency of this appeal; the trial court found that Andree's brother did not have any partnership interest in the seat or the MW

Trading Company. As such, this issue is now moot.

■ Next, Marshall argues that the property division must be set aside because the court failed to consider his liability for attorney fees. In support of this argument, Marshall cites the following quote from the trial court:

> "It seems to me that if I include as a liability the legal fees of Mr. Wright, I should also include as a liability the legal fees of Mrs. Wright which would be one approach, or the other approach would be to delete the legal fee liability all together for purposes of this balance sheet and *make my distribution simply bearing in mind that they exist on both sides of the fence.* That I have done." (Emphasis added.)

The above quote reveals that, contrary to Marshall's contention, the trial court did in fact consider Marshall's liability for attorney fees when it distributed the marital property. The court merely found, however, that it would be simpler not to actually list the fees of each spouse as a liability on the balance sheet since they would cancel each other out. After making the property division, the court concluded that, based on the assets awarded to Andree and Marshall, Andree was entitled to an additional $12,000 to defray the cost of her attorney fees. We find no impropriety as to this matter.

■ Marshall's final argument concerning the property division is that the trial court erred in failing to credit him with temporary support payments he made in the amount of $44,335. We disagree. There is nothing in the Act which requires that the trial court, in dividing marital property, allow a credit for temporary support payments. Marshall, in support of his argument, relies solely on *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 410 N.E.2d 580. There, the reviewing court merely held that the trial court did not err in allowing the husband a setoff for temporary maintenance he had paid to the wife. The court in *Crouch* did not hold that a setoff must be made. As such, Marshall's reliance on *Crouch* is misplaced.

The record before us shows that the trial court was knowledgeable about the financial circumstances of each party and attempted to dispose of the marital property in a manner that was fair and equitable to both parties. We must reject Marshall's attempts to set aside the property award.

■ Andree, in her cross-appeal, argues that the court abused its discretion by awarding her only 35% of the marital assets because she introduced Marshall to Mirochnick and to her brother and because he has the ability to earn substantial income and she does not. Presumably, Andree's argument is that the trial court failed to consider all

the relevant factors mandated by section 503(d) of the Act, and specifically (1) the contribution of Andree to the acquisition of the marital property, and (2) the reasonable opportunity of each spouse for future acquisition of income. Ill. Rev. Stat. 1985, ch. 40, pars. 503(d)(1), (d)(10).

The record reveals, however, that the trial court took both of these factors into account when it divided the marital assets. The court stated:

> "Here is a woman who hardly worked during the marriage. No children. But she did provide a contribution in the sense that she introduced Mr. Wright to people with money. I have tried to factor that into the equation.
>
> But it was Mr. Wright's abilities and skills that actually earned the money. He actually did the trading."

Hence, far from ignoring the introductions Andree provided for Marshall in 1977, the judge thought that they must be balanced against the years of work Marshall contributed to the acquisition of the marital estate.

The trial court further specifically considered both Andree's past work and her claim that she was not able to earn her living any longer, but it rejected the notion that she was unemployable. After considering the entire list of statutory criteria, including the brief duration of the marriage, the judge awarded 35% of the marital estate to Andree and 65% to Marshall. Andree has failed to demonstrate that such award constituted an abuse of discretion so as to require reversal of the property division.

## II

Both parties challenge the portion of the dissolution judgment awarding Andree maintenance of $2,500 per month for one year. Marshall contends first that Andree has failed to establish her right to maintenance. Alternatively, he argues that the amount awarded was excessive. Andree, in her cross-appeal, argues that the maintenance award is insufficient.

■■ Section 504(a) of the Act provides in part that a court may grant maintenance if it finds that the party seeking maintenance lacks sufficient property to provide for her reasonable needs, is unable to support herself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1985, ch. 40, par. 504(a).) The trial court, in determining the amount and duration of maintenance, is to consider all relevant factors, including: (1) the financial resources of the party seeking maintenance, including marital prop-

erty apportioned to him, and his ability to meet his own needs independently; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and the physical and emotional condition of both parties; and (6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).) The propriety of a maintenance award, as well as the amount of such award, are matters within the sound discretion of the trial court and will not be disturbed on appeal unless the court's decision amounts to an abuse of discretion or is against the manifest weight of the evidence. *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.

■ Here, we cannot conclude that the trial court abused its discretion in ordering Marshall to pay maintenance of $2,500 per month for one year. The record reflects that the trial court took into account each of the above factors in determining the amount and duration of maintenance. The court noted that the parties enjoyed a comfortable standard of living during the marriage and that Andree was entitled to a "reasonable period of adjustment." We agree. Given the facts and circumstances of this case, we refuse to disturb the maintenance awarded by the trial court.

### III

Finally, both parties raise objections concerning Andree's attorney fees. Marshall argues that the trial court erred in requiring him to pay $12,000 of the $24,000 in fees awarded to Andree's attorneys. Andree, in her cross-appeal, argues that the court should have required Marshall to pay all of her attorney fees. Neither party challenges the reasonableness of the fee award.

■ ■ Section 508 of the Act provides that the trial court may, after considering the financial resources of the parties, "order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse." (Ill. Rev. Stat. 1985, ch. 40, par. 508(a).) To justify an allowance of attorney fees in a dissolution proceeding, the party seeking the relief must show financial inability to pay the fees and the ability of the other spouse to do so. (*In re Marriage of Smith* (1985), 132 Ill. App. 3d 694, 479 N.E.2d 929.) Financial ability is not, however, to be equated with "destitution." Financial inability for purposes of awarding attorney fees in a divorce proceeding exists where the

payment of fees would strip the individual of his or her means of support and undermine his or her economic stability. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) The allowance of attorney fees rests within the sound discretion of the trial court and, as with any discretionary matter under the Act, will not be reversed absent an abuse of the court's discretion. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

Applying the above principles to the facts herein, we find no abuse of discretion as to this matter. As we noted above, the record indicates that the trial court was aware of each party's financial situation. It correctly concluded that Marshall's financial resources are sufficiently greater than Andree's to warrant him paying $12,000 of her attorney fees. Andree has failed to demonstrate, however, that she is financially unable to pay the remaining $12,000 and that Marshall is able to do so. Accordingly, the trial court's decision as to this issue is affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.