*In re* MARRIAGE OF REX CARR, Petitioner-Appellant and Cross-Appellee, and EDNA MAE CARR, Respondent-Appellee and Cross-Appellant.
Fifth District   No. 5—90—0643

Opinion filed December 5, 1991.

Katherine J. Tillery and Rex Carr, both of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellant.

Robert G. Heckenkamp, of Heckenkamp, Simhauser & LaBarre, P.C., of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

In this marriage dissolution matter in the circuit court of St. Clair County, petitioner Rex Carr was ordered to pay $20,000 of the $54,144.82 attorney fees and costs incurred by respondent Edna Mae Carr. Petitioner appeals from that order, contending that the order requiring him to pay respondent's attorney fees was erroneous. Respondent cross-appeals, contending the trial court should have required petitioner to pay all the $54,144.82, plus certain paralegal fees. We affirm.

■ Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides, in relevant part:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal

representation, expected to be incurred by the other spouse ***." (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).)

The award of attorney fees in a dissolution case is within the discretion of the trial court and will not be disturbed unless there is an abuse of that discretion. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 919, 466 N.E.2d 925, 935.) H. Joseph Gitlin, in his text on divorce, includes the following comment:

> "Much of the case law comments upon the necessity of showing that the party seeking payment of fees lacks the ability to pay his or her own fees and that his or her spouse has the ability to pay the fees. This is an overstatement and oversimplification of the actual case holdings. The case law compares the relative abilities of the parties, plus other factors. Courts have held that proving financial inability does not require a showing of destitution. Rather, the court, in measuring a party's financial ability to pay attorney's fees, examined whether the estate of the party seeking fees would be exhausted, or the party's means of support would be stripped and his or her economic viability would be undermined if the fee award were not made." (2 H. Gitlin, Gitlin on Divorce par. 19.03(M), at 509 (1991).)

However, the cases cited in the footnotes to the above passage were heard before the effective date of the Act. With the creation of "marital property" and the adoption of section 503 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 503), the allocation of attorney fees appears to have become a factor in the overall allocation of the financial resources of the parties. In *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 626, 453 N.E.2d 90, 94, the court stated:

> "Thus, our statutory scheme requires the trial court to consider the property received by each party, their respective incomes and financial obligations before allocating responsibility for payment of attorney fees. Necessarily, attorney fees should be allocated before the reviewing court can properly assess the trial court's division of property and decisions regarding maintenance and child support. Since the allocation of attorney fees judgment is dependent upon and integrally related to decisions regarding property, maintenance and child support, their allocation cannot fairly be characterized as collateral or incidental to the divorce decree."

In *In re Marriage of Hanson* (1988), 170 Ill. App. 3d 298, 305, 524 N.E.2d 695, 699, the court held one of the factors in determining the reasonableness of an award of attorney fees was the relative financial positions of the parties. In *Hanson*, the beneficiary of the

award of fees also received 70% of the marital property and maintenance for five years; the ex-husband's higher earning ability was considered justification for the division of marital property. The court referred back to the significant disparity in financial position as between the parties in ordering the ex-husband to pay $5,000 of the $9,486 in attorney fees charged to the ex-wife.

The court, in *In re Marriage of Wright* (1986), 180 Ill. App. 3d 911, 920-21, 536 N.E.2d 700, 705-06, upheld the trial court's order directing the ex-husband to pay $12,000 of the $24,000 in attorney fees incurred by the ex-wife, where both parties challenged this portion of the judgment. There, the court remarked that financial inability, for purposes of section 508 of the Act, is not to be equated with "destitution," and noted that the trial court had been aware of each party's financial situation. The *Wright* court stated that the trial court had correctly concluded that the ex-husband's financial resources were sufficiently greater than the ex-wife's to warrant ordering him to pay $12,000 of her attorney fees, and that she had failed to demonstrate that she was financially unable to pay the remainder while he was able to do so.

■ The opinions in both *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1027, 471 N.E.2d 1008, 1017, and *Weinberg* (125 Ill. App. 3d at 919, 466 N.E.2d at 935) hold that even if the spouse is awarded ample capital assets, she should not be required to deplete her capital assets or impair her economic stability by paying attorney fees, if the other party is able to provide part or all of that payment. We conclude the allocation of assets, liabilities, the award of any maintenance, and the relative earning abilities of the parties should be considered when determining an allocation of attorney fees pursuant to section 508(a) of the Act.

We do not completely abandon the previous decisions, such as *In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147-48, 398 N.E.2d 1243, 1245, which included the following statement:

> "The allowance of attorney fees under section 508(a)(2) requires a consideration of the financial resources of the parties. It is not sufficient simply to show that one party has a greater ability to pay, but rather the court requires a showing of the inability of one party to pay and the ability of the other party to pay. *Imes v. Imes* (1977), 52 Ill. App. 3d 792, 367 N.E.2d 1075."

However, "inability to pay" must be determined relative to the party's standard of living, employment abilities, allocated capital assets, existing indebtedness, and income available from investments and maintenance.

■ In the present case, we have a respondent who will not be employed. During the marriage, the parties enjoyed a relatively high standard of living. Funds were available for travel, and domestic help was available in the home. Petitioner's earned income, at times, was approximately $1 million per year. The petitioner was, and is, a very successful trial attorney. The dissolution decree awarded him most of the $4,300,000 worth of marital assets, while ordering him to pay approximately $1 million, in marital debts. Respondent was awarded $105,000 in available assets, together with $1 million to be paid by petitioner over nine years, with interest to be paid on the unpaid balance of 9% per annum. Maintenance was awarded to respondent in the amount of $5,000 per month, with a provision that it be reduced to $4,000 per month on January 1, 1991.

Respondent purchased a home, which required that she borrow considerable funds. She would initially be in a cash bind because of this expenditure but, considering the life-style previously maintained by the parties, the expenditure was not unreasonable. A finding that payment of the entire fee would impair her economic stability would be within the trial court's discretion.

Each decision allocating attorney fees and costs must necessarily be based on the facts presented in the case. Seldom will cases have similar facts. Different standards of living, with different incomes and assets, require different determinations. The trial court is in the best position to decide the various economic allocations. The decision allocating $20,000, and only $20,000, of respondent's fees and costs to petitioner was not against the manifest weight of the evidence.

Because the trial court considered all the evidence and knew a petition for fees was to be presented, we also conclude, under the facts in this case, that the fee and cost allocation should be affirmed as a necessary consideration affecting the provisions dividing assets and providing maintenance. We recognize this will not be true in many dissolution cases, but a $54,000 obligation is a significant factor to consider when allocating marital assets. The trial court's determination of allocation of respondent's attorney fees and costs is affirmed.

Affirmed.

LEWIS and KNECHT, JJ., concur.