*In re* MARRIAGE OF VERA GAIL FERKEL, Petitioner-Appellee, and THEODORE ALVIN FERKEL, Respondent-Appellant.

Fifth District    No. 5—92—0355

Opinion filed April 21, 1994.

Barbara Crowder, of Crowder & Taliana, of Edwardsville, for appellant.

William C. Evers III, of Collinsville, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Respondent, Theodore Alvin Ferkel, appeals from an order entered by the circuit court of Madison County on April 30, 1992, awarding and allocating the marital assets, ordering the sale of the marital residence, denying his request for maintenance, and awarding and ordering the parties' attorney fees to be paid from the proceeds of the sale of the marital residence. For the reasons that follow, we reverse and remand this cause with directions.

Petitioner, Vera Gail Ferkel, and respondent, Theodore (Ted) Ferkel, were married on August 18, 1984. No children were born to this marriage. On September 25, 1991, Vera filed a petition for dissolution of her marriage to Ted. A judgment of dissolution was entered on January 2, 1992, and a trial on the division and disposition of the property of the parties was held on April 2, 1992.

Prior to the trial, the parties entered into various stipulations regarding the value of certain property and the disposition and responsibility for certain debts. Pursuant to the stipulations, Vera received a 1987 Chevrolet and its $2,200 debt. The parties testified that the value of the vehicle was $4,800 to $6,500. Ted received a 1984 Chevrolet with no indebtedness. It was valued at $2,800 to $3,800. Vera became responsible for the Mastercard debt of $1,200 and the debt to American General of $800, plus the debts that she incurred subsequent to the separation of the parties. Ted became responsible for the Discover card debt of $2,500, plus the debts that he incurred subsequent to the separation.

Ted testified that his only source of regular income is the disability benefit that he receives from social security in the sum of $755 per month. Ted also receives $142 a month from a contract for deed for a nonmarital residence that Ted sold for $13,000 in 1985. Payments on this contract are not regular. At the time of trial, the balance owing on the contract for deed was approximately $6,000. The transactions regarding the contract for deed are handled by a realty company. Ted testified that he has never attempted to foreclose on the property because of the cost associated with foreclosing as well as the buyer's right of redemption, although the payments are routinely two or three months in arrears.

At the time of trial, Ted was 60 years of age and receiving social security disability benefits because of his poor health. Ted testified that he had become disabled during the marriage and is suffering from a heart aneurism and diabetes rendering him unable to work. After Ted's disability, he cleaned the residence, cooked the meals, and did the laundry. In addition to these duties, he also painted the marital residence twice. Ted acknowledged that Vera helped with some of the maintenance of the marital residence.

When the judgment of dissolution was entered in January 1992, the marital residence of the parties had a mortgage indebtedness of $15,011.24. Ted has paid the mortgage payment of $296 per month since the entry of the judgment of dissolution because he has had the exclusive use and enjoyment of the property. Ted testified that his utility bills at the marital residence average $141 per month. Ted also incurs an average of $141 per month for prescription medications and uninsured medical expenses. Ted's total monthly living expenses, while living in the marital residence, average $1,064 per month. This sum does not include the debt owed to Sears for carpeting for the marital domicile. As of November 1991, the balance owed to Sears was $2,038.25. Neither party has made a payment to Sears since that date.

Ted acknowledged at trial that his 37-year-old adult son had been living with him in the marital residence for a few months prior to the hearing. Ted denied that he was supporting his son. He testified that the monthly expenses that he submitted into evidence are his individual expenses. Ted testified that his son pays for his own food and gives Ted $10 per week to enable Ted to go bowling.

Lastly, Ted testified that Vera mutilated some family photographs that were taken throughout the course of the parties' marriage. Vera admitted to destroying the photographs and testified that she did not know whether she had the negatives to replace them.

Vera testified that at the time of the trial she was 44 years of age and gainfully employed as a certified nurse's aide. To become a certified nurse's aide she attended six months of specialized training. Her 1991 income was $16,072 (gross), verified by income tax returns and a W-2 statement from her employer. Also introduced into evidence were copies of her 1991 paycheck stubs. The paycheck stub dated December 14, 1991, reflects that Vera's year-to-date gross wages were $20,398.12. All paycheck stubs submitted into evidence by Vera dated subsequent to mid-September 1991 indicate that Vera's gross income exceeded the gross income of $16,072 listed on her 1991 income tax returns and W-2 form. The 1991 income tax returns indicate that she received a refund of approximately $1,225 on her Federal return and a $60 refund from Illinois.

Vera testified that her year-to-date gross as of March 9, 1992, was $5,478.82, and she had no reason to expect that her income for 1992 would not be the same as it had been in 1991. She testified that her net pay was approximately $660 every two weeks or $1,339 per month. She also receives approximately $380-per-month social security for her minor daughter, Amy. She also receives $50-per-week child support for Amy. At the time of the trial, Vera had pending a petition to increase the child support she receives from her former spouse. From her income, Vera listed expenses totalling $1,725.23 per month for herself, Amy, and her 20-year-old adult daughter.

At the conclusion of the trial, Ted's attorney testified that she charged Ted a total of $1,335.27 in fees and costs, and Vera's attorney testified that he charged Vera $1,400 in fees and costs with $300 representing the cost of having the marital domicile appraised. At the time of the trial, Ted owed his attorney $575, and Vera owed her attorney $1,100.

The trial court entered an order on April 30, 1992, which provided, among other things, that the marital residence of the parties was to be sold for $29,200 or a mutually agreeable price. From the proceeds of the sale certain debts were to be paid, including:

the Sears' bill for the carpeting in the marital residence, $575 of Ted's attorney fees, and $675 of Vera's attorney fees. The remaining proceeds were ordered to be divided equally between the parties. The trial court found that Ted did not lack sufficient property and income, including awarded marital property, to provide for his reasonable needs. The trial court concluded that except for the social security received by Vera for her minor daughter, Amy, the parties had nearly equal income. The trial court ordered Ted to pay to Vera's attorney one half the cost of having the marital residence appraised. Ted's request for maintenance was denied. The trial court also denied Ted any relief concerning the photographs destroyed by Vera because it concluded that it could not ascertain damages, citing that "no value can be placed on photographs." The instant appeal ensued.

Ted raises three issues on appeal:

(1) Whether the trial court erred in its disposition of the marital property;

(2) Whether the trial court erred in denying maintenance to Ted; and

(3) Whether the trial court erred in awarding fees to both attorneys to be paid from the net proceeds of the sale of the marital residence.

Ted argues that the trial court erred in its disposition of the marital property and specifically alleges that the trial court's decision to sell the marital domicile was against the manifest weight of the evidence. Ted also alleges that the trial court erred in denying any relief to Ted for Vera's dissipation of marital assets because of her wanton destruction of the marital photographs. Vera contends that the trial court's distribution of the marital property was not an abuse of discretion. Vera counters that her admitted destruction of the marital photographs is of such a minor nature that "it is difficult to justify much attention to it".

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act)(Ill. Rev. Stat. 1991, ch. 40, par. 101 *et seq.* (now 750 ILCS 5/101 *et seq.* (West 1992))) requires that the trial court divide marital property in just proportions. The trial court is to consider all relevant factors, which include: the contribution of a spouse as a homemaker; the value of the property set apart to each spouse; the duration of the marriage; the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home; the amounts and sources of each spouse's income; the age, occupation, vocational skills, employability, and needs of each party; whether the apportionment is in lieu of or in addition to maintenance; and the

reasonable opportunity for each spouse for future acquisition of assets and income. Ill. Rev. Stat. 1991, ch. 40, par. 503(d) (now 750 ILCS 5/503(d) (West 1992)).

■ Although Vera argues in her brief that there must be some job that Ted is able to perform with his health problems, she offered no evidence at trial in support of this argument. The uncontradicted evidence at trial was that Ted is 60 years of age, disabled, and on a fixed income of $755-per-month social security, with an unreliable income of $142 per month on a nonmarital contract for deed. Vera, at the time of the trial, was 44 years of age and trained and gainfully employed as a licensed nurse's aide. There is a discrepancy in the evidence with respect to the gross amount of income Vera earned in 1991. The 1991 State and Federal income tax returns with an attached W-2 indicate that Vera's gross income was $16,072. Copies of Vera's paycheck stubs indicate that Vera's gross income for 1991 was $20,398.12. Although Ted raised this discrepancy in his brief, it was not addressed or otherwise explained by Vera in her brief.

In any event, we believe that the trial court was operating under the mistaken notion that Vera and Ted had incomes which were nearly equal except for the social security Vera received for her minor daughter, Amy. Relying solely on Vera's 1992 paycheck stubs, excluding both the social security and child support that Vera receives for her minor daughter, Vera is netting $650 biweekly. Converting this amount into a yearly figure, Vera could expect to net $16,900 in 1992 or $1,409 per month. It is also reasonable to assume based upon the 1991 Federal and State tax returns that Vera would again be entitled to receive refunds of approximately $1,200 or $100 per month.

Without considering child support, Vera has a net income of approximately $1,509 per month. Ted has a net income range of $755 to $897 per month. Converting the $50-per-week child support to a monthly rate ($215 per month) and adding the $380-per-month social security, Vera has monthly income of approximately $2,104. Vera submitted evidence of total monthly expenses of $1,725.23 for herself, minor daughter Amy, and an adult daughter. On the other hand, Ted listed monthly living expenses of $1,064 per month premised on his continued use and enjoyment of the marital residence. Clearly, Vera has disposable income of approximately $379 per month, and Ted's income fails to meet his living expenses by $167 to $209 per month.

The distribution of marital property will only be reversed if the trial court abused its discretion by making a decision which a reasonable person could not adopt. (*In re Marriage of Jerome* (1994), 255 Ill. App. 3d 374.) Based upon the ages of the parties, the disparity in the

incomes of the parties, Ted's disability and needs, and Vera's disposable income and much greater opportunity for future acquisition of capital assets and income, we believe that no reasonable person would take the view adopted by the trial court in distributing the marital property. Accordingly, we hold that the trial court abused its discretion in apportioning the marital property of the parties, and we reverse the decision of the trial court.

Addressing now the issue of the damaged photographs, section 503 of the Act provides that certain factors are to be considered by the court when distributing marital property, including:

> "(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property." Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(1) (now 750 ILCS 5/503(d)(1) (West 1992)).

Our supreme court has held that dissipation refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 495, 563 N.E.2d 494, 498-99.) The dissipating party need not derive personal benefit from the dissipation in order to be held accountable. *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 507 N.E.2d 207.

Ted argues that the trial court erred in failing to order Vera to make copies of the destroyed photographs if she had the negatives. Ted makes a replevin-type argument and relies upon the case of *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499. In *Hofmann*, our supreme court found that a party had dissipated marital assets by fraudulently transferring a marital asset to a third party. It was held that a court may void a transfer of marital assets to a third party to allow the marital assets to be recovered.

Vera candidly admits that she destroyed the photographs, but we disagree with Vera's contention that "it is difficult to justify much attention to [this issue]." It is not unusual for one or both parties in a dissolution action to destroy or hide marital assets or property. Because the parties in a dissolution owe a duty not to dissipate marital assets, we cannot condone the dissipation or destruction of any marital assets or property, even photographs.

■ We believe that it was error for the trial court to grant Ted no relief merely because it could place no economic value on the destroyed marital photographs. Clearly, the destroyed marital property could be recovered if Vera retained the negatives and made copies of the destroyed photographs. On the other hand, if the marital property cannot be restored, the trial court at a minimum should

have determined damages and accordingly considered this issue in the distribution of the marital property.

The basis of every action for damages is the duty which one party owes to the other personally and which duty has been violated or disregarded. (15 Ill. L. & Prac. *Damages*, § 2, at 369 (1968).) While damages, in order to be recoverable, must be actual, not speculative, remote, or uncertain (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36), mere difficulty in ascertaining the amount of damages is not fatal. (*Johnston v. City of Galva* (1925), 316 Ill. 598, 147 N.E. 453.) Mathematical precision in fixing the exact amount of damages is not required. (*Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375, 357 N.E.2d 846.) Where a cause of action exists, at the very least nominal damages will be presumed and must be allowed. (*Van Velsor v. Seeberger* (1890), 35 Ill. App. 598.) Nominal damages are symbolic in nature. *Wallace v. City of Rock Island* (1944), 323 Ill. App. 639, 56 N.E.2d 636.

There is no doubt that Vera owed a personal duty to Ted not to dissipate by destroying marital assets. A cause of action exists for Vera's breach of that duty, and we believe the trial court should have granted Ted relief by restoring the marital property or at a minimum by determining and awarding nominal damages.

■ Directing our attention to the issue of maintenance, such an award is warranted when it is found that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for his reasonable needs and is unable to support himself through employment or is otherwise without sufficient income. (Ill. Rev. Stat. 1991, ch. 40, par. 504(a) (now 750 ILCS 5/504(a) (West 1992)).) Since a rehearing is necessary to determine the division and disposition of the marital property, the issue of maintenance for Ted should be reexamined at that time. This being the case, we need not address the issue of maintenance raised by Ted except to direct the trial court to reexamine this issue.

Lastly, Ted argues that the trial court erred in awarding attorney fees for both attorneys to be paid from the net proceeds from the sale of the marital residence of the parties. Vera admits that the trial court's order has Ted paying $50 beyond the amount owed to his attorney, but Vera argues that "such a minor award could hardly be held to be an abuse of discretion." We disagree.

Section 508(a) of the Act provides in relevant part:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient

financial resources to obtain or retain legal representation, expected to be incurred by any party ***." Ill. Rev. Stat. 1991, ch. 40, par. 508(a) (now 750 ILCS 5/508(a) (West 1992)).

We have previously held that "the allocation of attorney fees appears to have become a factor in the overall allocation of the financial resources of the parties." (*In re Marriage of Carr* (1991), 221 Ill. App. 3d 609, 611, 582 N.E.2d 752, 753.) "Thus, our statutory scheme requires the trial court to consider the property received by each party [and] their respective incomes and financial obligations before allocating responsibility for payment of attorneys fees." *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 626, 453 N.E.2d 90, 94.

■ It is apparent from the record that the trial court labored under the mistaken belief that the parties had nearly equal income. As we have previously discussed, there is in fact a disparity in the income of the parties. Vera is gainfully employed and enjoys disposable income of approximately $379 per month, while Ted is disabled on a fixed income of social security and is unable to maintain the modest lifestyle that the parties enjoyed during the course of the marriage.

Accordingly, we find that the trial court abused its discretion in ordering Ted to pay any of Vera's attorney fees, and we remand the issue of Ted's attorney fees for review.

Affirmed in part; reversed in part and remanded with directions.

LEWIS, P.J., and CHAPMAN, J., concur.