**F. Lee LAWRENCE, Trustee in Bankruptcy For Cain Banking Company, Appellant,**

v.

**C. W. BOLES, Appellee.**

No. 1398.

Court of Appeals of Texas, Tyler.

Dec. 17, 1981.

Rehearing Denied March 25, 1982.

---

George Conner, III, Lawrence & Lawrence, Tyler, for appellant.

Curtis Owen, Tyler, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a suit upon a promissory note which was executed by the appellee-defendant, C. W. Boles (Boles), in favor of Cain Banking Company. After the note became due, but before collection, the banking company went into bankruptcy. The trustee in bankruptcy, F. Lee Lawrence, represented the creditors of the bank in prosecuting this collection case against Boles.

Trial was had to a jury which returned a verdict in favor of Boles. On this verdict the trial court granted judgment in favor of the trustee for $1,174.36 which represents the amount of the note left owing, $3,636.43, less an allowed offset of $2,442.09. The trustee appeals from this judgment contending that the defendant Boles was not entitled to any offset.

We affirm the judgment of the trial court.

As indicated, the dispute between the two parties centered around Boles' right to an offset. At the time of the bankruptcy, Boles had three deposit accounts in the bank: (1) a personal account in the sum of $1,279.74, (2) an account used in Boles' dairy business in the sum of $2,209.89, and (3) a mineral royalty account in the sum of $232.20. At this same time, Boles owed $6,300, plus interest on a promissory note held by the bank.

The trustee in bankruptcy was charged with liquidating the assets of the bank and paying off the bank's creditors. In the discharge of his duties, he made demand on the note after offsetting $1,279.74—the amount in Boles' personal account. It is undisputed that Boles agreed to pay off the balance of the note if the trustee would offset the remaining two accounts. In fact, Boles made four $500 payments to the trustee, but refused to make any more until the dispute over the offsets was resolved. The trustee continued to deny the right to the offsets on the ground that the two remaining accounts in the bank were not Boles' sole property. The jury found that the dairy account was the sole property of Boles.[1]

In his first three points of error, the trustee argues that Boles did not comply with the rules of tender when offering to pay off the note. That is, Boles did not properly plead tender, so he should not have been allowed to introduce evidence of tender nor argue in his final summation that he had tendered. The trustee has not cited us to any authority requiring a depositor/debtor of an insolvent bank to first tender the amount he owes the bank before being allowed an offset. After a diligent search, we have not found any such requirement in the law.

Boles' first amended answer contained a general denial as well as averments that he was entitled to offset the two remaining

deposit accounts. He further averred that after allowing the proper offsets, he owed the trustee $1,174.36, which he had at all times been ready and willing to pay but which the trustee had refused. We agree that these averments do not allege a proper tender; we disagree that Boles was required to make a tender.

The rule is settled that where a depositor is indebted to a bank, and his indebtedness is due, he may offset his deposits against the indebtedness. This right of offset exists without any previous demand being made for the deposit. *Livestock State Bank v. Locke*, 277 S.W. 405 (Tex.Civ. App.—Amarillo 1925, error ref'd); *Reconstruction Finance Corp. v. Asher*, 110 S.W.2d 176 (Tex.Civ.App.—Waco 1937, no writ). If the depositor is not required to make a demand for his deposits before he is entitled to an offset, we see no reason to require him to tender his indebtedness before he can claim his offset. Appellant's points one, two and three are overruled.

In his fourth point of error, the trustee claims the trial court erred by not sustaining his objections to the questions asked witness McNally by Boles' attorney. Specifically, the trustee complains that McNally, an attorney himself, was asked whether "the law books are full of cases deciding which things are partnerships or not." The trustee argues that this called for an opinion from the witness which the law does not allow.

McNally, a law partner of the trustee, was called by the trustee to testify about a telephone call he (McNally) had had with Boles prior to the filing of the lawsuit. A copy of the notes McNally took during the conversation with Boles was introduced into evidence. Included in the notes was a reference to a "partnership" account about which the trustee questioned McNally during trial. Apparently the notes and testimony were offered as some evidence that Boles' dairy account was a partnership

---

1. No special issue was submitted on the ownership of the mineral account, but the judgment of the trial court offset the amount in that account nonetheless. No complaint is made on appeal.

account which could not be offset against his personal account. On cross-examination, Boles' attorney tried to ascertain whether the word "partnership" was used by Boles or whether it was McNally's conclusion that Boles' dairy business was in a partnership. McNally testified Boles used the term. Boles' attorney then elicited McNally's testimony that many lay people used the word "partnership" when, in fact, they legally do not have such an association. The trustee objected to this line of questioning as calling for an opinion.

While it is generally true that witnesses are to give evidence as to facts and not statements of the law, *Collins v. Gladden*, 466 S.W.2d 629, 632 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.), we do not find the testimony of McNally to have been erroneously admitted. McNally never did testify on the elements of a partnership nor did he offer an opinion as to whether Boles was or was not operating his dairy business as a partnership. Since the trustee first elicited the testimony about Boles operating his dairy business as a partnership, we think Boles' attorney should have been allowed to challenge that on cross-examination. The error, if any, in allowing Boles' attorney to ask McNally if the law books were not filled with cases on which constitutes a partnership was, at best, harmless. Rule 434, Tex.R.Civ.P. Appellant's fourth point of error is overruled.

■ The trustee next assails as error the action of the trial court in overruling his objection to certain questions Boles' attorney propounded to witness R. P. Smith. Mr. Smith was employed by the trustee to keep the records on the loans at the defunct bank. Prior to that he had been employed by a Tyler bank for 35 years. On cross-examination, Boles' attorney asked Smith if, in his experience in the banking area, he was aware of bank accounts being owned by one person but having several signatures authorized to write checks on the account. In other words, was the name on the account conclusive of ownership? The trustee objected claiming that the question called for a legal opinion. The objection

was overruled and Smith answered that it was possible to have an account owned by one person and yet have several people writing checks on it.

We agree with the trial court that Smith's opinion was admissible. The function of Mr. Smith, or any witness, is to give information which will be helpful to the jury. *Carr v. Radkey*, 393 S.W.2d 806, 812 (Tex.1965); Ray, Evidence, Vol. 2, Sec. 1395 (1980). Smith had extensive experience with banks and their practices. We think his testimony as to how bank accounts were handled was both relevant and helpful to the jury. Appellant's fifth point is overruled.

■ The trustee's sixth point of error complains about the jury's award of no attorney's fees to the trustee's attorney. Boles' attorney testified and argued to the jury that no attorney's fees should be awarded because the lawsuit had been filed unnecessarily. That is, Boles offered to pay off his bank note if the trustee would offset his two deposit accounts. The trustee wrongfully refused to offset and, instead, filed this lawsuit. Therefore, Boles argued, the suit was unnecessary and no attorney's fees should be awarded.

The trustee urges on appeal that Boles should not have been allowed to offer such testimony nor to make such an argument because Boles had not made a proper tender. The argument seems to be that since Boles had not "tendered" the amount he owed the bank, he could not testify that he offered to pay the bank. Without that testimony, there would be insufficient evidence for the jury to find that the suit was filed unnecessarily. We have already decided that Boles was not required to make a tender. The jury was within its right to deny the trustee attorney's fees, and appellant's sixth point is overruled.

■ In his seventh and final point, the trustee claims that the jury's answer to Special Issue No. 1 was supported by insufficient evidence. That special issue and answer were as follows:

Do you find from a preponderance of the evidence that the account in the Cain Banking Company in the name of Mr. or Mrs. C. W. Boles and Mr. or Mrs. Bobby Boles in the amount of $2,209.89 was on the 26th day of January, 1977, the sole personal property of Mr. C. W. Boles?

We the jury answer: Yes

In testing the factual sufficiency of the evidence, we must consider all the evidence in the record that is relevant to the fact being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The evidence introduced by Boles in support of the finding that the dairy account was his sole property included his own testimony that the money in the account belonged only to him and that he allowed his wife, son and daughter-in-law to write checks on the account only for his convenience. Boles' son, Bobby, also testified that he was working in the dairy business with his father; that he was authorized to write checks on the account; that neither he nor his wife had any interest in the dairy account; and that so far as he knew no one else had any interest in the dairy account other than his father.

The evidence contrary to the jury's finding was testimony that the account was made a joint account at the request of Boles; that the other signatories wrote checks on the account; that Boles had his personal account at another bank; and that Boles told McNally that the dairy account was set up at Cain Banking Company to keep the funds of the "company" separate from his personal account.

After reviewing the evidence both in support of and contrary to the jury's finding, we conclude that the evidence is sufficient and that the jury's answer to Special Issue No. 1 is not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellant's seventh point is overruled.

Having considered all of appellant's points of error and finding them to be without merit, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

On motion for rehearing the trustee urges us to reverse that portion of our opinion which upheld the jury's answer on the issue of attorney's fees.

The jury at trial was asked one question concerning attorney's fees. That was, "From a preponderance of the evidence, what amount of money, in dollars and cents, do you find to be a reasonable attorney's fee for the collection of the balance of the note owed by C. W. Boles, less the offsets claimed by C. W. Boles?" The jury answered "0.00."

The trustee's original argument on this point, as we understood it, was that Boles could not offer evidence on the value of attorney's fees because he had not tendered the amount of his debt to the trustee before claiming his offsets. We held that Boles was not required to tender any amount before claiming his offsets and overruled the trustee's point.

Now, the trustee claims what he meant to argue was that Boles had to tender the amount owing after deducting the claimed offsets in order to avoid the assessment of attorney's fees.

We do not think the issue under this point was whether Boles had to tender, or whether his tender was excused, since the issue submitted to the jury asked what the *value* of the attorney's services were. In other words, the issue at the trial was not whether trustee was entitled as a matter of law to attorney's fees. We assume that since the issue of the value of the services was submitted to the jury that the trial court found the trustee's attorney was entitled to a reasonable fee. The only question for the jury was the "reasonable value" of the services.

The defendant Boles testified and argued at trial that the value of the attorney's services was zero because the suit against him was brought unnecessarily. That is, Boles offered to pay off the note if the trustee would allow the claimed offsets. Since the trustee refused to allow the offsets, Boles refused to pay off the balance,

and the trustee filed suit for the total amount.

The trustee contends that this testimony by Boles on the attorney's fee issue was inadmissible because it was an "offer to compromise" a dispute. Offers to settle or compromise a suit are usually excluded at trial because it is the public policy of the law to encourage the settlement of controverted claims. See Ray, Law of Evidence, § 1142 (1980) and cases cited therein. In the instant case, Boles offered the testimony as evidence that the suit was filed unnecessarily. There was no policy reason for excluding the testimony, and the trial court did not err in admitting it.

In other words, the reason for excluding settlement offers from evidence is to protect the party offering to settle from having such offers introduced against him at trial. The judicial system should encourage settlements, yet the introduction of settlement offers would tend to discourage the same. However, here it was the party offering to settle the dispute who introduced the evidence as a defense against the imposition of attorney's fees. We think the evidence was properly admitted and supported the jury's finding on the reasonable value of the attorney's fees.

Appellant's motion for rehearing is overruled.