*In re* MARRIAGE OF FRANCESCA SURIANO, Petitioner-Appellee, and THEODORE LaFEBER III, Respondent-Appellant.

First District (4th Division)   No. 1—99—3721

Opinion filed August 30, 2001.

Feiwell & Meenan, of Chicago (Daniel C. Meenan, Jr., of counsel), for appellant.

Nottage & Ward, of Chicago (Richard A. Wilson and Eunice Ward, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Respondent Theodore LaFeber III (Ted) appeals from certain provisions of a reconsidered judgment for dissolution of marriage entered in the circuit court of Cook County on September 28, 1999, and from a memorandum order and opinion entered in connection with the reconsidered judgment on August 6, 1999. On appeal, Ted raises multiple issues, contending that the court abused its discretion in its award of attorney and expert fees and costs, and refusing to readjust and reallocate its division of marital assets and liabilities after correcting an initial error in the categorization and award of a 1997 income tax refund.

Ted also moved to set bond on October 25, 1999, to stay enforcement of the money judgment for attorney fees. The circuit court initially set the supersedeas bond for $675,000 on December 3, 1999, to cover the entire amount of the judgment; however, Ted successfully moved to reduce the bond in this court on the basis that the only money judgment issue he would appeal related to the award of attorney fees and expert fees amounting to $83,500. Approval of the bond, reduced to $150,000 to cover those obligations, was granted on May 18, 2000. After Ted's brief was filed with this court, petitioner Francesca Suriano (Francesca) moved to strike the second section of his brief, alleging that because the supersedeas bond covered only the amount of attorney fees and expert fees, Ted could not raise the argument on appeal for readjustment and reallocation of the 1997 income tax refund, contained in point II. On June 16, 2000, an order was entered to take the motion with the case.

The issues presented on appeal include whether the circuit court abused its discretion (1) in its award of attorney and expert fees and costs to Francesca; and (2) in its allocation and nonadjustment of a 1997 income tax refund.

Francesca and Ted were married on May 27, 1990, in Chicago, and have two minor children from the marriage. They separated on or about July 17, 1997. On September 2, 1997, Francesca petitioned for dissolution of marriage. Ted responded and filed a counterpetition for dissolution of marriage on October 10, 1997. Francesca filed a response to the counterpetition on November 4, 1997.

Thereafter, the case moved through discovery, raising questions of valuation of Ted's business interests, dissipation of assets, maintenance, child support and other contested matters. Trial commenced on June 24, 1999. On July 29, 1999, the circuit court heard closing argument, the focus of which dealt with the issue of whether Ted's business interests would be deemed marital property. The court took the matter under advisement and thereafter ordered, *inter alia*, that petitions for contribution to attorney fees were to be filed before August 10, 1999, and that the judgment for dissolution of marriage would not be entered until resolution of the contribution issue.

On August 6, 1999, the circuit court issued a written memorandum opinion, findings, conclusions and order following trial on the issue of dissolution. The memorandum opinion made findings as to both valuation and division of the property, and expressly stated that it was "not a final order and is to be superseded by the judgment of dissolution to be entered herein. Pending entry, enforceability, and effectiveness of such judgment, all temporary orders shall continue." The court ruled that Ted's interests in the family businesses constituted marital property and awarded Francesca $608,017, being 40.91% of the marital estate. Ted was awarded with $878,171, or 59.09% of the total value of marital property. Also, the court found that a 1997 income tax refund (tax refund) was an asset of the estate, which it awarded to Ted.

The memorandum opinion anticipated the adjudication of fee contribution petitions and its impact on the division of property by the circuit court prior to the entry of judgment for dissolution of marriage; it expressly provided that hearings for the petitions for contribution were to be scheduled for a date prior to the entry of judgment and draft judgments of dissolution in conformity with the memorandum were to be submitted leaving provision for inclusion of a section 503(j) (750 ILCS 5/503(j) (West Supp. 1999)) (section 503(j)) contribution pursuant to the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 (West 1998)).

Francesca petitioned for contribution to attorney and expert fees and costs on August 10, 1999, seeking payment totaling $151,534, pursuant to section 503(j) of the Act, contending that because Ted received a disproportionate share of the marital estate and was awarded a busi-

ness interest that would continue to generate significant income, Ted should pay for her attorneys' and experts' fees and costs. Ted filed his petition for contribution to attorney fees the same day, under sections 508(a) and (b) (750 ILCS 5/508(a), (b) (West 1998)) (section 508(a)) of the Act. Ted's petition claimed, in relevant part, that Francesca was obligated to contribute to the payment of his attorneys' fees due to her own conduct throughout the divorce proceedings, which included a finding of contempt of court and sanctions. In her response to Ted's petition, Francesca denied Ted's substantive allegations and argued that the circuit court was obliged to make any and all fee determinations under the considerations of section 503 (750 ILCS 5/503 (West Supp. 1999)) (section 503). Ted, in his response to Francesca's petition, denied that section 503 trumps section 508 (750 ILCS 5/508 (West 1998)) (section 508) and, as a result, limits the court in terms of what factors and criteria may be considered with respect to fee petitions. Ted contended that an evidentiary hearing mandatorily was required and demanded such a hearing on the outstanding fee issues. On September 2, 1999, the court conducted a hearing on the petitions for contribution for attorney fees.[1]

During the hearing, Ted reasserted the arguments made in his written pleadings challenging the reasonableness of Francesca's request for fees and continued to demand that the circuit court conduct an evidentiary hearing for the posttrial fee dispute, noting the unfairness of paying additional sums to Francesca's estate when his award primarily consisted of liquid assets. Finally, Ted sought to make an offer of proof with regard to pretrial settlement negotiations to resolve the fee dispute.

After lengthy argument by both parties, the circuit court rejected Ted's offer of proof of settlement negotiations and found that section 503 did not mandate an evidentiary hearing for attorney fees. Further, the court denied Ted's petition and granted Francesca's petition to the extent that it ordered Ted to contribute from his share of the marital estate the aggregate sum of $93,491 toward Francesca's attorneys' and experts' fees and costs. The aggregate sum amounted to 75% of the 82% balance owed to Francesca's attorneys and expert witnesses. The court also rejected Ted's request that the fee award be handled on a percentage basis of fees actually and unilaterally paid by Francesca, as opposed to fees billed but unpaid at the time of the hearing and decision.

---

[1]Additional counsel appeared on behalf of Ted at the hearing for any attorney fees that would arise subsequent to trial. The additional counsel did not file Ted's petition for contribution, response to Francesca's petition for contribution or the notice of appeal.

On September 3, 1999, the circuit court heard further argument concerning the specific language sought by each party in the forthcoming judgment for dissolution of marriage. The parties discussed scheduling a hearing on any posttrial motions that either party may file pursuant to section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 1998)) (section 2—1203), seeking clarification, reconsideration or modification of the judgment. The court entered an order providing for the judgment on the fees and set a hearing for September 13, 1999, for any posttrial motions to be filed.

The judgment for dissolution of marriage was entered on September 7, 1999, and included the circuit court's findings on the petitions for contribution to attorney fees, specifically acknowledging the hearing on Francesca's and Ted's petitions for contribution pursuant to section 503 on September 2, 1999, and that Ted was obliged to pay Francesca a total of $93,491 for attorney and expert fees and costs. Attached to the judgment was the court's memorandum opinion. Certain paragraphs of the judgment specifically made reference to the memorandum opinion although the judgment did not expressly incorporate it.

On September 9, 1999, each party filed a section 2—1203 motion seeking reconsideration of the judgment. Ted alleged five circuit court errors in the judgment, including (1) the failure to conduct an evidentiary hearing; (2) the findings and order pertaining to the tax refund; (3) the refusal to consider evidence of settlement offers when hearing the cross-petitions for attorney fees; (4) the classification of Ted's business interests as marital property; and (5) the failure to adjust the property settlement after ordering Ted to contribute to Francesca's attorneys' fees. Francesca's motion for reconsideration sought certain findings pertaining to the nondischargeability in bankruptcy by Ted of the awards of property to Francesca under the judgment, including the attorney and expert fees contribution award.

On September 13, 17 and 22, 1999, the circuit court heard extensive argument on the section 2—1203 motions. Thereafter, the court entered a supplemental order on September 28, 1999, which clarified and modified the September 7, 1999, judgment for dissolution of marriage. Also on September 28, 1999, the court entered a reconsidered judgment for dissolution of marriage (reconsidered judgment), in which the court took the findings contained in the four-page supplemental order and rewrote the court's September 7, 1999, judgment to include the modifications.

The supplemental order granted Francesca's request for findings pertaining to Ted's nondischargeability in bankruptcy of the property awarded to her, including attorney fees. The circuit court found that

Ted's tax refund was of no value to him, nor an asset of the estate, and, as a result, the reconsidered judgment reflected a deletion of the tax refund as a marital asset and as an award to Ted, but not an adjustment of the parties' total awards. Similar to the September 7, 1999 judgment, the reconsidered judgment also required Ted to pay $93,491 for Francesca's attorneys' and experts' fees and costs. Lastly, the court denied all other relief not otherwise granted therein to Francesca and denied all other relief sought by Ted.

Ted's notice of appeal dated October 25, 1999, was filed by additional counsel, separate from counsel that appeared at the September 2, 1999, contribution hearing. Ted appeals from the reconsidered judgment with regard to the circuit court's findings as to marital property, dissipation, the tax refund, contribution to attorney fees and, expanding on the foregoing assertions of abuse of discretion, he appeals the entire reconsidered judgment and memorandum opinion.[2]

On May 10, 2000, Francesca moved to strike section II of Ted's brief, which seeks review of the circuit court's reclassification and nonadjustment of the tax refund. In her motion to strike, Francesca alleges that Ted should be barred from reasserting an issue on appeal which he had abandoned after he obtained a reduced supersedeas bond. On June 16, 2000, the appellate court ordered that Francesca's motion to strike be taken with the case.[3]

I

In determining the award of attorney and expert fees and costs, Ted contends the circuit court abused its discretion by: (1) refusing to

---

[2]Also, on October 25, 1999, Ted filed a motion to set bond, seeking to stay enforcement of part of the judgment. Ted's motion sought a bond to cover the $93,500 contribution amount to Francesca's attorneys' and experts' fees. Francesca's response to the motion alleged that the bond needed to be substantially higher because Ted had in fact sought an appeal of the entire judgment. Ted filed a reply to Francesca's response. The circuit court heard the motion on December 3, 1999, and entered an order setting bond at $675,000. Subsequently, on January 3, 2000, the appellate court reduced the bond to $150,000.

On April 6, 2000, the appellate court entered an order approving the appeal bond and letter of credit subject to the condition that any stay entered pursuant thereto will terminate upon expiration of the letter of credit securing said bond (October 24, 2001) or upon final disposition of the instant appeal, whichever occurs sooner. On May 1, 2000, Ted moved for final approval of the appeal bond. The appellate court granted the motion on May 18, 2000, subject to the conditions of the April 6, 2000 order.

[3]An appellate court order entered September 21, 2000, dismissed Francesca's cross-appeal.

conduct an evidentiary hearing in connection with the parties' cross-petitions for contribution of their respective attorney fees; (2) rejecting evidence of a pretrial settlement as an offer of proof; (3) requiring Ted to pay a set amount of billed attorney and expert fees; and (4) allocating a substantial amount of the award of Ted's estate assets as contribution to the payment of Francesca's attorneys' and experts' fees.

### A

Ted initially asserts that sections 503 and 508 of the Act require that an evidentiary hearing be conducted in connection with the cross-petitions for contribution of attorney fees and costs, which the circuit court denied, thereby violating his due process rights. Ted contends that sections 503 and 508 must be considered in conjunction with one another, noting that proceedings brought under section 503(j) shall be heard and decided based on a petition for contribution and, absent an agreement between the parties, must be determined in a hearing pursuant to subsection (c) of section 508 (750 ILCS 5/508(c) (West 1998)) (section 508(c)).

●1 The allowance of attorney fees and the amount awarded are matters within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 111, 728 N.E.2d 1278 (2000). A reviewing court is not justified in substituting its discretion for that of the circuit court. *In re Marriage of Lee*, 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126 (1979) (*Lee*). The question for the reviewing court is not whether it agrees with the circuit court's decision; rather, the reviewing court must analyze whether the circuit court, in the exercise of its discretion, acted arbitrarily without conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted. *Lee*, 78 Ill. App. 3d at 1127.

●2 Application of sections 503 and 508 in this case involves an issue of statutory construction. In construing a statute, the reviewing court's primary objective is to ascertain and give effect to the intent of the legislature. *People v. Robinson*, 172 Ill. 2d 452, 457, 667 N.E.2d 1305 (1996) (*Robinson*). The most reliable indicator of legislative intent is the plain and ordinary meaning of the language used in the statute. *Robinson*, 172 Ill. 2d at 457. Where the language is clear and unambiguous, the statute must be applied without the further aids of statutory construction. *Robinson*, 172 Ill. 2d at 457. Statutory construction is a question of law and, therefore, the standard of review is *de novo*. *Robinson*, 172 Ill. 2d at 457.

In the instant case, Ted misinterprets section 508's connection to section 503(j) of the Act. In 1997, the Illinois legislature revised a number of provisions in the Act, including those governing attorney fees. See 750 ILCS 5/503(j), 508 (West 1996). Prior to the 1997 amendments, section 508 of the Act governed the award of attorney fees and final petitions in marriage dissolution cases. 750 ILCS 5/508 (West 1992). Under the former provisions of section 508(a), after due notice and hearing, and after considering the financial resources of the parties, the circuit court could enter an order requiring any party to pay a reasonable amount for his or her own costs and attorney fees and for the costs and attorney fees necessarily incurred by the opposing party. 750 ILCS 5/508(a) (West 1992).

•3 Upon amending the Act, the legislature prescribed that petitions for contributions to attorney fees and petitions for approval of final fees be considered in separate and distinct proceedings. See *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 477, 712 N.E.2d 411 (1999) (*McGuire*). One purpose of this legislation was to reduce the potential for conflicts of interest between attorneys and their clients and for infringement upon the attorney-client privilege in cases where attorney fees became an issue. *McGuire*, 305 Ill. App. 3d at 477.

Amendments to section 508(a) and the addition of section 503(j) did not constitute substantive changes; rather, they altered the procedures by which issues regarding attorney fees are presented and heard in dissolution cases. *McGuire*, 305 Ill. App. 3d at 478. Judicial discretion in the determination of where and how much to award as attorney fees was neither eliminated nor diluted by these amendments. *McGuire*, 305 Ill. App. 3d at 478.

•4 The statutory language of section 503(j) is clear and unambiguous. Section 503(j) neither makes provision for nor mandates an evidentiary hearing in connection with the circuit court's determination of the allocation of attorney fees and costs. Indeed, the statutory language is contrary to Ted's contention that contribution hearings brought pursuant to section 503(j) must be determined under section 508(c) hearings. See 750 ILCS 5/503(j)(4) (West Supp. 1999). Section 508(c) becomes pertinent in a *final* determination only *after* a judgment for dissolution of marriage awards contribution for attorney fees to the petitioning party. Further, section 508(c) requires that filing counsel previously has been granted leave to withdraw as counsel of record or has filed a motion for leave to withdraw as counsel prior to a final hearing for attorney fees and costs against their former client.

See 750 ILCS 5/508(c)(1) (West 1998).[4] The record contains no motion for leave to withdraw as counsel by Ted's attorneys.

In *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 345, 722 N.E.2d 287 (1999) (*Brackett*), the court cautioned against too literal a reading of section 503(j), stating, "[w]e do not read section 503(j) as requiring an additional hearing, which would further burden already overburdened trial courts, but, rather, as requiring a trial court to hear, through testimony or otherwise, additional proofs when a petition for contribution is filed in accordance with section 503(j) in the context of preexisting proceedings. If the trial court wishes to hold a separate and distinct hearing on the petition, it has the discretion to do so." In *Brackett*, the record contained no indication that the circuit court made a separate ruling on respondent's petition for contribution and no evidence was presented, either at a separate hearing or during any of the proceedings regarding the amount of attorney fees owed by respondent or petitioner. 309 Ill. App. 3d at 345-46.

The present case is distinguishable from *Brackett* because the circuit court provided the parties with a contribution hearing on

---

[4]Also, section 508(c)(2) states:

"No final hearing under this subsection (c) is permitted unless: (i) the counsel and the client had entered into a written engagement agreement at the time the client retained the counsel (or reasonably soon thereafter) and the agreement meets the requirements of subsection (f); (ii) the written engagement agreement is attached to an affidavit of counsel that is filed with the petition or with the counsel's response to a client's petition; (iii) judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection (j) of Section 503 has been waived; (iv) the counsel has withdrawn as counsel of record; and (v) the petition seeks adjudication of all unresolved claims for fees and costs between the counsel and the client. *Irrespective of a Petition for Setting Final Fees and Costs being heard in conjunction with an original proceeding under this Act, the relief requested under a Petition for Setting Final Fees and Costs constitutes a distinct cause of action.* A pending but undetermined Petition for Setting Final Fees and Costs shall not affect appealability of any judgment or other adjudication in the original proceeding." (Emphasis added.) 750 ILCS 5/508(c)(2) (West 1998).

In the instant case, the record does not indicate relief requested pursuant to a petition for setting final fees and costs. Also, evidence from the record does not show compliance with subsections (i) through (v) of section 508(c)(2). In other words, Ted or his counsel could not request a section 508 hearing until a judgment was entered pursuant to section 503(j) (or a hearing under section 503(j) was waived) and compliance with the requirements listed in section 508(c)(2).

September 2, 1999, during which the parties argued at length about the allocation of assets and liabilities and the relative earning abilities of the parties, to determine contribution toward payment of the other party's attorney fees. See *In re Marriage of Carr*, 221 Ill. App. 3d 609, 612-13, 582 N.E.2d 752 (1991) (*Carr*). The court heard argument specifically concerning the necessity for an evidentiary hearing and an offer of proof of settlement negotiations involving attorney fees, and it was within the court's discretion whether to allow an additional, separate hearing. The plain and ordinary meaning of section 503(j) does not require a separate evidentiary hearing. Because the statute is plain and unambiguous, there is no need to turn to other tools of statutory construction for interpretation. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 173, 692 N.E.2d 281 (1998) (*Mitchell*).

Accordingly, the circuit court did not abuse its discretion by refusing to conduct an additional evidentiary hearing in connection with the parties' cross-petitions for contribution of attorney and expert fees and costs.

## B

Ted next contends that the circuit court abused its discretion by not considering an offer of proof of pretrial settlement negotiations. In his response to Francesca's petition for attorney fees, he attached both a copy of the marital settlement agreement which, according to Ted, could have been accepted, and an affidavit of Theodore LaFeber III, explaining the circumstances behind rejection of the settlement. Ted does not assert that the issues regarding the settlement should have been considered in connection with the substantive divorce case. In essence, he argues that the entire trial had been unnecessary, given the availability prior to trial of the same property settlement arrangements and the same net financial benefits to Francesca, by agreement. Ted asserts there is no controlling Illinois authority regarding this issue, but points out that other jurisdictions have accepted the proposition that settlement potential is properly considered as relevant and probative of issues relating to requests for the payment of attorney or other professional fees.[5]

●5 The appellate court in *In re Marriage of Passiales*, 144 Ill. App.

---

[5]See *Fenters v. Fenters*, 238 Ga. 131, 133, 231 S.E.2d 741, 743 (1977) (holding that ''[w]hile it undoubtedly is true that evidence as to settlement negotiations is inadmissible at trial to determine the issue of liability, after a divorce and alimony case has been settled by agreement (except as to attorney fees), the effort needed by counsel to reach such settlement is a matter which can be considered in determining the amount of attorney fees to be awarded''); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 351, 972 P.2d 676, 684 (1998) (finding

3d 629, 494 N.E.2d 541 (1986) (*Passiales*), provides the controlling Illinois precedent for the issue of admitting pretrial settlements into evidence to resolve attorney fee disputes. In *Passiales*, the court found that the circuit court did not abuse its discretion in refusing to allow respondent to make an offer of proof of petitioner's rejection of a settlement offer. Where an offer of proof is necessary, it is error for the circuit court to refuse counsel's request to make one. *Blazina v. Blazina*, 42 Ill. App. 3d 159, 166, 356 N.E.2d 164 (1976). An offer of proof is unnecessary, however, when the nature of the proposed evidence is obvious. *Allen & Korkowski & Associates v. Pettit*, 108 Ill. App. 3d 384, 388, 439 N.E.2d 102 (1982).

The *Passiales* court also found that the circuit court did not abuse its discretion in refusing to admit the respondent's evidence of the repudiated settlement, ruling that "[m]atters relating to offers of settlement or compromise are ordinarily inadmissible, but admission of other facts elicited incidentally during settlement discussions may be introduced as evidence." *Passiales*, 144 Ill. App. 3d at 640. The evidence respondent sought to introduce was not an incidental fact elicited during settlement talks; rather, respondent sought to establish that petitioner refused to agree with a proposed settlement. Such evidence is inadmissible because it is a matter relating to an offer of compromise or negotiation. *Passiales*, 144 Ill. App. 3d at 640. Another reason for excluding matters relating to settlement is that " 'public policy favors such compromises and in that light they should be considered inadmissible.' " *Smiley v. Manchester Insurance & Indemnity Co. of St. Louis*, 49 Ill. App. 3d 675, 681, 364 N.E.2d 683 (1977), citing *Hill v. Hiles*, 309 Ill. App. 321, 331, 32 N.E.2d 933 (1941). Finally, the *Passiales* court held that petitioner's conduct during negotiations was inadmissible not only due to public policy, but also because such evidence is irrelevant to the issue of whether petitioner was liable for respondent's attorney fees. *Passiales*, 144 Ill. App. 3d at 641.

●6 In the case *sub judice*, the circuit court heard extensive argument from both parties to determine whether evidence of a settlement proposal should be admitted. Ted wanted to introduce evidence that Francesca repudiated a settlement agreement. Here, as in *Passiales*, an offer of proof was unnecessary because the nature of the evidence was obvious. Further, the evidence Ted sought to introduce in this

---

that the circuit court may consider a party's settlement position in determining reasonableness of attorney fees under Arizona statute); *Lawrence v. Boles*, 631 S.W.2d 764, 769 (Tex. Ct. App. 1981) (evidence properly was admitted where it was the party who had offered to settle the dispute that introduced evidence thereof as a defense against the imposition of attorney fees).

case was not an incidental fact elicited during the settlement negotiations. The court properly found this evidence inadmissible because it was a matter relating to an offer of compromise or negotiation. Additionally, evidence of Francesca's conduct during negotiations was irrelevant to the issue of liability for attorney fees. The failure to reach a settlement does not mandate, in and of itself, that a litigant must pay his opponent's fees, nor does it justify the amount of a fee award. *Bellow v. Bellow*, 94 Ill. App. 3d 361, 371, 419 N.E.2d 924 (1981).

The circuit court did not abuse its discretion in refusing to admit evidence of a pretrial settlement as an offer of proof.

## C

●7 Ted next argues that the circuit court abused its discretion under the circumstances of this case by awarding a set dollar amount of fees claimed and billed rather than a percentage of fees ultimately paid by Francesca to her counsel. Ted asserts it is inherently inequitable to order a husband to pay $93,500 in attorney fees and then permit the wife to compromise with her counsel the balance on which the award was based.

Ted cites no legal authority to support his contention on this issue. Lack of citation to legal authority in briefs before this court constitutes a failure to comply with Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)) and results in waiver. *People v. Hood*, 210 Ill. App. 3d 743, 746, 569 N.E.2d 228 (1991) ("[c]ontentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7)"); *People v. Barlow*, 188 Ill. App. 3d 393, 405, 544 N.E.2d 947 (1989) ("failure to provide this court with any legal argument or citation to supporting authority waives this issue for review").

Notwithstanding the foregoing, according to section 503(j) of the Act, upon which the record shows the circuit court based its decision, a contribution award may take the form of either a set dollar amount or a percentage of fees and costs. 750 ILCS 5/503(j)(5) (West Supp. 1999). The statute does not require allocation of attorney fees based on a percentage of fees ultimately paid. The language of the statute being clear and unambiguous, there is no need to rely on other methods of statutory construction for interpretation. *Mitchell*, 181 Ill. 2d at 173.

The circuit court did not abuse its discretion in requiring Ted to pay a set amount of billed attorney and expert fees and costs.

## D

Ted next asserts that the circuit court abused its discretion by allocating a substantial amount of the award of Ted's marital estate as-

sets as contributory payment of Francesca's attorneys' and experts' fees and costs. According to Ted, each party should have paid his or her own fees and costs, given the allocation of marital assets, unallocated support and maintenance. Ted argues that after the judgment on the petition for contribution was entered, he was awarded an inequitable distribution of assets because he received only 49.48% of the marital estate while Francesca was awarded a 50.51% distribution. This contention is based on the fact that the August 6, 1999, memorandum opinion, which expressly stated it was not a final judgment, awarded Ted with 59.09% of the marital estate and Francesca with 40.01% of the marital assets. Ted concedes, however, that this allocation of attorney fees was a result of no additional source of funds or assets with which to pay this obligation, other than the assets awarded to Ted as part of his equitable distribution.

Francesca argues that the judgment for dissolution entered September 7, 1999, did not reduce any award to Ted because the memorandum opinion was not a final and fully contemplated adjudication of the parties' petitions for contribution to attorney fees.

●8 Attorney fees are the primary responsibility of the party for whom the services are rendered. *In re Marriage of Krivi*, 283 Ill. App. 3d 772, 780, 670 N.E.2d 1162 (1996) (*Krivi*). When determining an award of attorney fees, the allocation of assets and liabilities, maintenance and the relative earning abilities of the parties should be considered. *Carr*, 221 Ill. App. 3d at 611. A party seeking an award of attorney fees must show that he or she is unable to pay those fees and the other party is able to do so. *Krivi*, 283 Ill. App. 3d at 780. Whether the attorney fees of one spouse should be paid by the other spouse, and in what proportion, is a decision that lies within the sound discretion of the circuit court. *Carr*, 221 Ill. App. 3d at 611. An abuse of discretion can be shown in cases where the evidence reveals a gross disparity in income and earning capacity and the financial inability of the spouse seeking relief to pay. *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 976, 677 N.E.2d 463 (1997).

●9 Here, the record demonstrates that Ted did not meet his burden to show that he was unable to pay his attorney fees and that Francesca was able to pay them. See *McGuire*, 305 Ill. App. 3d at 479. Financial inability exists where payment would undermine the economic stability of the spouse incurring the debt. See *Krivi*, 283 Ill. App. 3d at 780. Based on evidence submitted during trial, Ted is clearly capable of generating significant income, earning a gross monthly income from salary and business interests of over $41,000. Also, even if the court allocated illiquid assets to Ted, because Ted earns income through business interests, he has the ability to continue generating future income.

Further, Ted has not demonstrated that Francesca is in any better position to pay her attorney fees. The record indicates that Francesca's net monthly income is $4,406. This case illustrates a gross disparity in the abilities of each party to generate income. The record shows that the circuit court considered allocation of attorney fees in conjunction with section 503(j) of the Act. See 750 ILCS 5/503(j)(2) (West Supp. 1999). Although Ted may be required to make some sacrifices in order to pay Francesca's attorneys' and experts' fees, there is no evidence that his economic stability will be undermined as a result.

There was no abuse of discretion by the circuit court in the amount of allocation of contribution for Francesca's attorneys' and experts' fees and costs to Ted.

## II

Ted next insists that the circuit court abused its discretion in refusing to readjust its division and award of marital assets and liabilities after correcting an error in the initial categorization and award of the tax refund in the amount of $97,540.

The memorandum opinion awarded the $97,540 to Ted as a marital asset. The tax refund was applied to the 1998 tax return during the existence of the marriage and, consequently, at a hearing subsequent to trial, the circuit court found that the $97,540 was a marital debt rather than a marital asset. In the reconsidered judgment, the court ruled that the tax refund was not an asset of the marriage and specifically made no adjustment to the division of marital assets from the memorandum. Ted maintains that the failure to reallocate the tax refund between the parties resulted in a reduction of Ted's share of the estate. Thereafter, in ordering Ted to pay $93,500 in attorney fees to Francesca, the court shifted the percentage of the marital estate awarded to him *de facto* from 59.09% to 49.48%. According to Ted, it is both a factual and legal impossibility to determine that a deviation in excess of 10% of the marital estate to the detriment of one party from the memorandum opinion to the reconsidered judgment is fair and equitable under both sets of circumstances. As a result, Ted contends that the balance sheets dividing the marital awards should be adjusted.

●10 Francesca further seeks to strike section II of Ted's brief arguing the above issue because Ted filed a motion to set bond to cover the amount of contribution for attorney fees instead of the amount for the entire judgment, relying upon Supreme Court Rule 305(a) (155 Ill. 2d R. 305(a) (Rule 305(a)). Francesca did not oppose Ted's attempt to set bond based on the amount of attorney fees. She relied on a letter that Ted's attorney sent to her stating that the only money judgment issue on appeal relates to the award of attorney and expert fees addressed in the reconsidered judgment of dissolution.

Because Ted sought the bond only to cover attorney fees, Francesca maintains he should not be allowed to argue reallocation of the tax refund on appeal. Francesca, however, cites no legal authority in support of her motion.

The issue of reallocation of the tax refund was raised at trial, specifically discussed in the circuit court's findings and preserved in Ted's notice of appeal. The motion to strike, taken with the case, is hereby denied.

First, the issue of whether the amount of the supersedeas bond properly was reduced from $675,000 to $150,000 must be revisited. Under Supreme Court Rule 305(g) (155 Ill. 2d R. 305(g)), the reviewing court has the authority, upon motion, to change the amount of the appeal bond. Rule 305(a) states that the bond "shall be in an amount sufficient to cover the amount of the judgment, interest and costs." 155 Ill. 2d R. 305(a). The committee comments to the 1993 amendments (155 Ill. 2d R. 305(a), Commentary at lxxxviii) state that "[t]his rule has been reorganized to provide greater clarity to the practice of obtaining a stay of the trial court judgment. Paragraph (a) makes clear that the bond in a money judgment case must be sufficient to cover the entire amount of the judgment, interest and costs." In Ted's motion to set bond, he sought to cover the amount of the disputed attorney and expert fees; however, his notice of appeal requested review of the entire amount of awarded marital assets. The circuit court ordered Ted to pay $350,000 in installments to Francesca beginning January of 2002 and continuing until the year 2005 to effectuate the property division of land and stocks which Ted owns free and clear as a result of the reconsidered judgment. A stay issued by the appellate court is intended to maintain the status quo pending the appeal by suspending enforcement of a judgment and to preserve the fruits of a meritorious appeal where they might otherwise be lost. *Stacke v. Bates*, 138 Ill. 2d 295, 302, 562 N.E.2d 192 (1990).

In the present case, Ted has proceeded to appeal the entire amount of the awarded marital assets, instead of limiting the review only to the attorney and expert fees awarded by the circuit court, and which had been the basis for reducing the amount of the supersedeas bond by the appellate court. The appeal bond should also cover the full amount of the reconsidered judgment, including the award of attorney and expert fees and costs.[6] Accordingly, the appeal bond must be modified to reflect the full amount of judgment.

---

[6]The proper amount of the appeal bond depends on the determination of whether the balances of the marital awards will be readjusted without allocation of the tax refund, post.

·

●11 Addressing the allocation of the 1997 tax refund, in a dissolution of marriage proceeding, the Act requires the circuit court to divide the marital property in just and equitable proportions. 750 ILCS 5/503(d) (West Supp. 1999). The court's distribution of marital assets will be reversed only if its decision is against the manifest weight of the evidence and, therefore, an abuse of discretion. *In re Marriage of Abma*, 308 Ill. App. 3d 605, 614, 720 N.E.2d 645 (1999) (*Abma*). A judgment is against the manifest weight of the evidence if a contrary conclusion is clearly evident. *Abma*, 308 Ill. App. 3d at 614.

In the present case, Francesca maintains that the circuit court could not award the tax refund because the memorandum opinion was not a final order. The record indicates, however, that the court integrated the $97,540 into Ted's marital award in the memorandum opinion. The record also shows that the tax refund was nonexistent because it was already applied to the 1998 tax return. When the court incorrectly awarded the tax refund to Ted as a marital asset in the memorandum opinion, it did not subsequently subtract and readjust the balance of the parties' marital awards upon correcting its mistake of allocation in the reconsidered judgment. The court's decision to make no adjustment to the division of marital assets ordered in the reconsidered judgment clearly was against the manifest weight of the evidence and an abuse of discretion, which must be reversed.

The circuit court's decision as to the foregoing issue is remanded with instructions to adjust and reallocate the total amount of marital assets without the existence of the 1997 tax refund so the balances to Ted and Francesca reflect the appropriate division of marital awards, and to readjust the supersedeas bond accordingly, if Ted desires to stay the judgment while proceeding further.

For the reasons aforesaid, the judgment of the circuit court of Cook County is affirmed with respect to the attorney and expert fee allocations, and is reversed and remanded in regard to the division of marital assets. A new supersedeas bond, if any, should reflect the entire judgment, as presented in this appeal.

Affirmed in part, reversed in part and remanded with directions.

HOFFMAN and SOUTH, JJ., concur.