NOTICE

Decision filed 03/01/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200090-U

NO. 5-20-0090

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TERRA SPELLMAN, n/k/a Terra Rodman, | ) | Shelby County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 18-D-29 |
| and | ) | |
| | ) | |
| RYAN SPELLMAN, | ) | Honorable |
| | ) | Daniel E. Hartigan, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in ordering the respondent to pay $5000 as partial payment for the petitioner's attorney fees in the proceedings for the dissolution of the parties' marriage, $3500 to the petitioner for the value of the firearms that the respondent was awarded, $3520 to the petitioner for approximately one-half of the equity in the all-terrain vehicle that was awarded to the respondent, and one-half of the equity in the marital home to the petitioner.

¶ 2    On May 13, 2019, the trial court entered a judgment of dissolution of marriage between the petitioner, Terra Spellman n/k/a Rodman, and the respondent, Ryan Spellman.  In the judgment, the court determined the property distribution, ordered the

1

respondent to pay $5000 of the petitioner's attorney fees, and allocated the parties' marital assets and debts. On appeal, the respondent contends that the court abused its discretion (1) in ordering him to pay $5000 for the petitioner's attorney fees; (2) in ordering him to pay $3500 to the petitioner for the approximate value of the firearms that he was awarded; (3) in ordering him to pay the petitioner $3520, representing one-half of the value of the all-terrain vehicle (ATV) that was awarded to him; and (4) in ordering him to pay the petitioner $13,016.50, which represented one-half of the equity in the marital home. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 22, 2012, the petitioner and the respondent were married. They had no children. On May 14, 2018, the petitioner filed a petition to dissolve the marriage. At that time, the petitioner was 27 years old, and the respondent was 31 years old. On July 18, 2018, the trial court entered a judgment of dissolution of the marriage on grounds only, reserving ruling on all other issues. On March 12, 2019, the petitioner filed a notice of intent to claim dissipation, contending that during the pendency of this proceeding, the respondent sold marital firearms to his father for $3500 without the petitioner's consent and had used those funds for his personal use.

¶ 5     On March 26, 2019, the trial court held a trial on the remaining issues. At the time of the hearing, the petitioner was 27 years old and resided at her parents' residence in Shelbyville, Illinois. She was employed at Graphic Packaging and International, a factory in Shelbyville, making approximately $16 per hour. She did not have a college education, but she had a cosmetology license. She did not work as a cosmetologist

because the income at the factory was more consistent. During her marriage to the respondent, she did not have full-time employment because the respondent forbade it; she did have part-time employment as a hairdresser where she rented out a space at a hair salon. The respondent was employed as a lineman, and he was the primary breadwinner during the marriage. The parties' intention was that, at some point, the petitioner would stop working part-time, and they would have children.

¶ 6    The parties purchased a home located in Macon, Illinois, and the home was jointly titled in their names as tenants by the entirety. There was a mortgage on the residence. The respondent resided at the marital home during the dissolution proceedings, and the petitioner indicated that she was agreeable to signing a quitclaim deed to transfer ownership of the home to him. However, she requested that the trial court award her one-half of the equity in the house. There was an appraisal of the home, which was admitted into evidence and valued the home at $135,000. As of January 29, 2019, the outstanding mortgage debt was $108,967, and the balance near the time of dissolution was $110,192. There were no major renovations or additions to the home during the marriage, but the respondent did install a new drainage system and cleaned out the septic system.

¶ 7    The petitioner had a Discover credit card in her name only that she obtained during the marriage. As of March 23, 2018, the balance due on that card was $12,042.57. She requested that the respondent be ordered to pay one-half of the card balance. She used the card to purchase groceries and clothing for them, gas for their vehicles, things for the house at Menards and Lowe's, supplies for their two dogs, and flights for their various vacations.

¶ 8    The petitioner had a retirement account, which she opened shortly after the dissolution of the marriage, and the balance in the account was approximately $1000. The respondent also had a retirement account, and on March 31, 2018, the balance was $335,954.61. The petitioner requested that she be awarded one-half of the marital portion of the respondent's retirement account and that she be named as the beneficiary on the marital portion of that account. She also requested that the respondent be ordered to pay one-half of any costs associated with dividing the retirement account.

¶ 9    During the marriage, the petitioner considered herself a "stay-at-home wife"; she did the cooking, cleaning, and laundry; she mowed the lawn; and she took care of the dogs. She indicated that she did "pretty much everything." The personal property was split by the parties at separation. Before their separation, the petitioner took all of their firearms to the respondent's father's house when the respondent was placed under a 72-hour suicide watch. One of the firearms was a 9-millimeter that was registered in her name; she did not have that firearm in her possession at the time of trial. There was an appraisal completed on the firearms that valued them at $3850. The appraisal cost $300, and the petitioner requested that the respondent be ordered to pay that. When she reviewed the appraisal, she noticed that not all of the firearms were included. The missing firearms were a Mossberg duck gun; a .357 handgun; a 7-millimeter firearm; a 7.62 by 39-millimeter long, high-powered rifle; and the 9-millimeter firearm that was registered in her name and was a gift from the respondent. She later learned that the respondent had sold all of the firearms to his father for $3500. She requested that she

4

receive one-half of the appraised value of the firearms and that the undisclosed firearms be returned to her.

¶ 10    The parties purchased an ATV in July 2014, and it was appraised at $6500. They had taken out a loan to purchase the ATV, and as of September 2018, the balance on the loan was $3310. She indicated that the respondent could keep the ATV and asked for one-half of the equity. The respondent also purchased various tools, such as floor jacks, different hand tools, and saws, etc., during the marriage. When she moved out of the marital home, she only took the personal property that her parents had given her and left the rest; she believed that the total value of the items that she left was more than the total value of the items that she took. She had a Ford Explorer prior to the marriage, the parties traded the Explorer for a 2012 Jeep, and then traded the 2012 Jeep for a 2016 Jeep Wrangler. The Jeep Wrangler was the only vehicle that the parties had, it was titled in the respondent's name, and the petitioner agreed that the respondent could keep it along with the outstanding debt.

¶ 11    The parties obtained a $1000 loan from the petitioner's parents, which was still outstanding, and she asked the trial court to split that debt equally between them. She explained that they obtained the loan from her parents to help them pay bills because the respondent was unemployed at this time. She also put some household expenses on her credit card. The petitioner also had approximately $4000 in school debt that she was willing to assume. She had a checking account, and as of February 26, 2019, the balance in that account was $166; she indicated that was a typical balance for that account. During the marriage, the respondent had accounts through First National Bank in

5

Nokomis, Illinois, that were in his and his mother's names. The income that he earned during the marriage was deposited in those accounts, and the petitioner never had access to those accounts or deposited money into those accounts. The petitioner requested one-half of the amounts in those accounts.

¶ 12   The petitioner explained that they lived a very comfortable lifestyle; they bought whatever they wanted, and they went out to eat whenever they wanted. They also took expensive vacations, and she never refused to go on those trips. When the respondent was gone for extended periods of time for work, she was the sole caretaker of the house. The respondent financially supported her during the marriage. She did not have any education or experience that allowed her to be employed outside of factory work or cosmetology. She requested maintenance in the amount of $1022 per month for 20 months because she did not have enough money to rent a house or purchase a vehicle. The parties were married almost six years. She did not want to work in the factory her entire life; she wished to pursue a nursing degree but could not afford it without maintenance.

¶ 13   The petitioner's parents loaned her approximately $10,000 to pay her attorney fees, and she requested that the respondent be ordered to reimburse her for her attorney fees. Although there was no written agreement between her and her parents with regard to repayment of the loan, she explained that she would be paying them back. She had no knowledge about the respondent's parents loaning them approximately $35,000 to pay bills when the respondent was unemployed; the respondent never mentioned it to her.

6

¶ 14   Terry Rodman, the petitioner's father, testified that he loaned the parties $1000 to pay some bills and get some groceries, and he expected to be repaid.  He explained that the petitioner approached him for the loan, the respondent was not there during the conversation, and his wife wrote the $1000 check out to the petitioner.  He also loaned the petitioner money to pay her attorney fees, it was not a gift, and he expected to be repaid.

¶ 15   The respondent testified that he was 31 years old and was living in the marital residence at that time.  He was employed as a lineman, earned $51.75 per hour, and worked 40 hours per week.  Throughout the marriage, his parents had loaned him approximately $35,000 when he was unemployed.  He was unemployed for about 15 months; he took time off work to finish construction projects around the house.  He did all the maintenance and remodeling on the house himself, and the petitioner did not help him.  As for the firearms, he noted that the Mossberg gun was a birthday present to him from his father.  He acknowledged that the 9-millimeter was the petitioner's gun, but he thought she had taken it when she moved all of the firearms to his father's house, and he did not know where it was.  He also did not know where the other undisclosed firearms were located.  The high-powered rifle was not his firearm, and he had been holding it for a friend.

¶ 16   The respondent testified that during the marriage, he supported the petitioner's career in cosmetology, but he wanted her to focus on that and did not want her to get another job in addition to that because he needed her to help around the house.  She never indicated that she was dissatisfied with this arrangement.  He wanted the Jeep, the marital

residence, and the ATV, and he was willing to take the debt on them. He was agreeable to an equal distribution of the credit card debt. He did not have any joint bank accounts with the petitioner. He had one savings account and two checking accounts; the savings account and one of the checking accounts were jointly owned with his mother. At the end of July 2018, the savings account had a balance of $25,629.31; the checking account had a balance of $26,214.13; and the second checking account in his name only had a balance of $196.67. He explained that the accounts that he held jointly with his mother were his mother's accounts, and his name was only on the accounts to give him access if necessary. However, he acknowledged that there were regular transfers made between the three accounts. The petitioner never contributed anything to the funds in those accounts. During their marriage, he helped the petitioner make payments on her cosmetology school loan. He acknowledged that the petitioner wrote the checks out for their monthly bills, and he signed those checks. The respondent obtained a $5000 loan from his father and his aunt to pay his attorney fees. He also sold the firearms to his father to pay for his attorney fees and other bills after the parties separated. He did not report this sale on his filed financial affidavit.

¶ 17   On April 11, 2019, the trial court entered a written order on the remaining issues. In the order, the court ordered the respondent to pay $5000 toward the petitioner's attorney fees; to pay $3500 to the petitioner for the approximate value of the firearms that the respondent received; and to pay the petitioner $3520, which represented one-half of the equity in the ATV. The petitioner also received one-half of the marital portion of the respondent's pension. After refinancing the mortgage to remove the petitioner's name

8

from the loan and paying the petitioner one-half of the equity in the home, the respondent would receive title to the marital residence. Each party was ordered to pay one-half of the credit card debt, the petitioner was responsible for her student loan debt, and the respondent was solely responsible for the $35,000 undisclosed loan from his parents. The court found that all bank accounts were marital property and that the petitioner was entitled to one-half of the total balance. The court denied the petitioner's request for maintenance due to the short amount of time that the parties were married and found that the petitioner did not meet the statutory factors to receive maintenance. The court ordered the petitioner's attorney to prepare a written order in conformity with this order.

¶ 18    On May 13, 2019, the trial court entered the judgment of dissolution of marriage on the remaining issues that was prepared by the petitioner's counsel. The judgment was consistent with the court's April 2019 order. In addition, the judgment awarded each party the personal property in their possession. The judgment also found that the respondent was to pay the petitioner $13,016.50 for her one-half of the equity in the marital residence.

¶ 19    On June 6, 2019, the respondent filed a motion to reconsider the judgment of dissolution of marriage, contending that the trial court erred in ordering the respondent to make a partial payment for reimbursement of the petitioner's attorney fees, in ordering him to pay any sum for the firearms and the ATV, and in ordering him to pay any sum for the marital residence as the petitioner only minimally assisted with the property maintenance and the remodeling work on the home. The respondent also argued that the court erred in allocating any portion of the credit card debt to him. He further contended

that the court erred in finding that his jointly held bank accounts were marital property in that his uncontradicted testimony revealed that those accounts were funded by his mother, and although his name was on the accounts, he did not contribute to any of those funds.

¶ 20　On January 15, 2020, the trial court entered an order, granting the respondent's motion to reconsider in part. In the order, the court found that the $52,222.40 in the bank accounts held jointly with the respondent's mother were not marital property because the respondent's unrebutted testimony was that the accounts had been funded by his mother. Thus, the court awarded the balance in those accounts to the respondent. The court then denied the rest of the arguments in the motion to reconsider. On May 28, 2020, the respondent was granted leave to file a late notice of appeal, and the notice of appeal was filed *instanter*.

¶ 21　　　　　　　　　　　　　II. ANALYSIS

¶ 22　The respondent first contends that the trial court abused its discretion in ordering him to partially pay the petitioner's attorney fees. Specifically, he argues that the $10,000 that the petitioner received from her parents should be deemed a gift instead of a loan as it was unlikely that her parents expected to be paid back.

¶ 23　Generally, attorney fees are the responsibility of the party who incurred the fees. *In re Marriage of Stufflebeam*, 283 Ill. App. 3d 923, 929 (1996). However, section 503(j)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(j)(2) (West 2018)) allows for an award of contribution of attorney fees to one party from the other party based on the same criteria used for dividing marital property under

this section. The allocation of attorney fees in a dissolution of marriage proceeding and the proportion to be paid by each party are within the trial court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *In re Marriage of Minear*, 181 Ill. 2d 552, 562 (1998). A reviewing court should not substitute its judgment for that of the trial court. *In re Marriage of Suriano*, 324 Ill. App. 3d 839, 846 (2001). "The question for the reviewing court is not whether it agrees with the circuit court's decision; rather, the reviewing court must analyze whether the circuit court, in the exercise of its discretion, acted arbitrarily without conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted." *Id.*

¶ 24 Here, the trial court ordered the respondent to pay the petitioner $5000 as a partial payment for her approximately $13,000 in attorney fees. The evidence at trial was that the petitioner had full-time employment at a factory making $16 per hour while the respondent was employed as a lineman making $50 per hour. The petitioner had one retirement account containing $1000, a checking account with a balance of $166, and no savings account. The respondent had access to over $50,000 in the bank accounts that he held with his mother. The petitioner had no vehicle and wanted to find housing as she was living with her parents, but she testified that she could not afford this on her salary alone. Thus, the evidence at trial indicated that the petitioner lacked the financial resources to pay her attorney fees, and the respondent had the ability to pay.

¶ 25 Moreover, while it is true that the evidence indicated that the petitioner received $10,000 from her parents to pay toward her attorney fees, the presumption that this

11

transfer was a gift was rebutted by the testimony at trial. See *In re Marriage of Brown*, 110 Ill. App. 3d 782, 784 (1982) (donative intent is presumed when a transfer is from a parent to a child; however, that presumption can be overcome if contradicted by evidence presented at trial). At trial, the petitioner testified that the $10,000 was a loan. The petitioner's father corroborated her testimony by testifying that the $10,000 was a loan that he expected to be repaid. The most relevant evidence in determining donative intent is the donor's own testimony. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 92 (1991). Accordingly, we find that the trial court did not abuse its discretion in ordering the respondent to pay $5000 toward the petitioner's attorney fees.

¶ 26 The respondent next contends that the trial court abused its discretion in dividing the assets and debts pursuant to section 503(d) of the Act (750 ILCS 5/503(d) (West 2018)). Under section 503(d) of the Act, the court has the authority to divide the marital property in "just proportions" after considering all relevant factors. *Id.* The distribution of the marital assets must be equitable. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 34. However, an equitable distribution need not be an equal distribution of the marital assets and debts. *In re Marriage of Awan*, 388 Ill. App. 3d 204, 213 (2009).

¶ 27 Section 503(d) lists the following 12 factors for the trial court to consider when dividing the marital property: (1) each party's contribution to the acquisition, preservation, or increase or decrease in the value of the marital or nonmarital property, which includes any decrease attributable to an advance from the parties' marital estate, the contribution of a spouse as a homemaker, and whether the contribution is after the

12

commencement of a proceeding for dissolution of marriage; (2) the dissipation by each party of the marital property; (3) the value of the property assigned to each spouse; (4) the duration of the marriage; (5) the relevant economic circumstances of each spouse when the division of property is to become effective; (6) any obligations and rights arising from a prior marriage of either party; (7) any prenuptial or postnuptial agreement of the parties; (8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; (9) the custodial provisions for any children; (10) whether the apportionment is in lieu of or in addition to maintenance; (11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and (12) the tax consequences of the property division upon the respective economic circumstances of the parties. 750 ILCS 5/503(d) (West 2018).

¶ 28    A distribution of marital property is a matter within the discretion of the trial court. *Hamilton*, 2019 IL App (5th) 170295, ¶ 34. A reviewing court will not disturb the court's distribution of assets absent an abuse of that discretion. *Id*. An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *Awan*, 388 Ill. App. 3d at 213.

¶ 29    Here, the respondent contends that the trial court abused its discretion in ordering him to pay $3500 for the approximate value of the firearms, $3520 for approximately one-half of the equity in the ATV because there was a $3310 outstanding debt on the ATV, and $13,016.50 for one-half of the equity in the marital residence where he contributed more to the improvement and remodeling of the home.

13

¶ 30    The evidence at trial indicated that all of the parties' firearms were placed with the respondent's father after the respondent was placed on suicide watch shortly before the parties separated. The marital firearms were appraised by an agreed appraiser and were valued at $3850. However, the petitioner testified that the appraisal did not include four firearms, and those firearms were still missing at the time of the trial. The testimony also revealed that the respondent sold all of the accounted-for firearms to his father after the parties' separation for $3500. The respondent did not report this sale on his financial affidavits or in any of his discovery responses.

¶ 31    As for remaining marital assets, the parties stipulated that the marital home, the only marital vehicle, and the ATV were to be awarded to the respondent. During the trial, counsel for both parties agreed that the equity in the marital home would be equally split and that the real estate was no issue. As a result, the trial court apportioned the marital home to the respondent and ordered him to pay the petitioner one-half of the equity in the home. Also, the court awarded the respondent the only marital vehicle, the ATV, and other personal property that included tools, floor jacks, hand tools, saws, etc. The petitioner had no education or work experience that allowed her to be employed outside of factory work or cosmetology, she had no savings, she regularly had less than $200 in her checking account, and she was living with her parents because she could not afford alternative housing on her salary alone. Further, she did not receive any maintenance due to the short duration of the marriage. Although the respondent contended that he contributed more to the remodeling of the marital home, the petitioner testified that she contributed as a homemaker.

14

¶ 32   As we have previously stated, courts have repeatedly and consistently held that "just proportions" requires an equitable, but not necessarily an equal, division of the marital estate. *Awan*, 388 Ill. App. 3d at 213.  What constitutes an equitable distribution of the estate depends on the unique facts of each case. *In re Marriage of Jones*, 187 Ill. App. 3d 206, 222 (1989).  Based on the facts of this case, including the disparity in the parties' income, the value of the property awarded to the petitioner, and the fact that the petitioner needed to obtain alternative housing and purchase a vehicle, we find that the trial court's allocation of the marital assets and liabilities was not an abuse of discretion.

¶ 33                                    III. CONCLUSION

¶ 34   For the foregoing reasons, we affirm the judgment of the circuit court of Shelby County.

¶ 35   Affirmed.